2012 Ark. App. 171

**Jeremy Dewayne SUMMERS, Appellant**

v.

**Charlie Elmer BYRD, Individually and in his Official Capacity; Robert Leon Lewis, Individually and in his Official Capacity; Fred L. Roberts, Jr., Chief of Police of Gosnell, In His Official Capacity; City Of Gosnell; and Dick Reams, Mayor of the City of Gosnell, In his Official Capacity, Appellees.**

**No. CA 11–847.**

Court of Appeals of Arkansas.

Feb. 22, 2012.

Rehearing Denied April 4, 2012.

---

Mandy Nicole Meadors, Blytheville, for appellant.

Richard Alfred Reid, Blytheville, for appellee.

RITA W. GRUBER, Judge.

Appellant Jeremy Summers appeals from the trial court's dismissal of his lawsuit against the City of Gosnell and various city officials. Appellant filed a complaint against police officers Charlie Elmer Byrd and Robert Leon Lewis; Chief of Police Fred L. Roberts, Jr.; Mayor Dick Reams; and the City of Gosnell. He alleged that they deprived him of his Fourth Amendment right to be free from seizures of his person; deprived him of his Fifth and Fourteenth Amendment rights to due process of law, including the right to be free from arrest without probable cause; maliciously prosecuted him; committed the tort of outrage; defamed him; falsely imprisoned him for a crime he did not commit; violated his property rights because their actions made it difficult for him to find a job; and committed negligence by failing to protect him from erroneous charges filed without probable cause. The trial court granted appellees' motion for summary judgment, and appellant filed this appeal. We affirm the court's order.

A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law. *Mitchell v. Lincoln*, 366 Ark. 592, 596, 237 S.W.3d 455, 458 (2006). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* at 597, 237 S.W.3d at 458. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* at 597, 237 S.W.3d at 459.

## I.

Appellant's civil lawsuit springs from his arrest and subsequent prosecution in the Mississippi County Circuit Court on charges of rape and second-degree sexual assault. The jury found him not guilty on both charges. Following his acquittal, appellant filed this lawsuit against those parties that he deemed responsible for the criminal charges.

The criminal case began on May 7, 2006, when Michelle Priddy called the Gosnell Police Department and reported that her daughter, B., had been raped the day before in the tree line between Knight's Trailer Park and Jackson Street. B. told her mother that the boy's name was "Chris." B. was fifteen years old but possessed the mental capacity of a seven- or eight-year-old child. Officer Charlie Byrd went to their home and briefly interviewed Ms. Priddy, who told him that she would take B. to have a sexual-assault kit performed and then come to the police station. Based on a description of the perpetrator

provided to Officer Byrd by Ms. Priddy and B., Officer Byrd canvassed the area where the incident occurred. He spoke with a resident of Knight's Trailer Park and learned that Jeremy Summers had visited the resident's daughter the day before and had been wearing clothes similar to those worn by the alleged perpetrator.

Officer Robert Lewis interviewed B. and Ms. Priddy at the police station. B. told him that she had been riding her bike when a boy asked her to go riding with him. She said that she was riding and the boy was walking. She went with him to an area east of Knight's Trailer Park where there was a fence and shrubs, and the boy asked her to have sex with him. After she told him "no," he forced himself on her. He told her not to tell anyone. B. told Officer Lewis that she had seen the boy before but did not know his name. Officer Lewis gave B. a three-year-old Gosnell High School yearbook. She looked through the yearbook and picked out Jeremy Summers. The district judge issued a warrant for appellant's arrest. Unable to post bond until it was reduced, appellant remained incarcerated for six months. At trial in August 2007, the jury found him not guilty. He filed this lawsuit on April 28, 2009.

## II.

Appellees filed a motion to dismiss, which the court denied. Appellant admitted in his response to the motion to dismiss that, because of sovereign immunity, none of the defendants could be held liable for common-law-negligence claims and that the claims against Fred Roberts, who was not chief of police at the time of the incident, should be dismissed. Appellees then filed a motion for summary judgment contending that appellant had conceded that appellees were immune from suit for negligence and, therefore, that only the claims

involving intentional acts remained. Appellees also argued that appellant did not claim that Mayor Dick Reams committed any intentional acts, only that he failed to demand that the City of Gosnell adopt rules and regulations with regard to police practices. With regard to Officers Byrd and Lewis, appellees contended that appellant's answers to interrogatories claimed only that they did not ensure that proper police practices were used during the investigative phase of the charges brought against him and that Officer Lewis improperly found probable cause from the statements of a mentally deficient fifteen-year-old girl.

Appellees attached the affidavit of Ms. Priddy, who stated that she initiated the proceeding against appellant, that B. picked appellant from the yearbook, and that at no time did either Officer Byrd or Officer Lewis suggest the name of appellant as a possible suspect or hint that he was involved. She also stated that, while B.'s mental capacity was less than that of a fifteen year old, she was "quite capable of conversing with you, recognizing parties and she [was] being schooled in Special Education."

Appellees attached the affidavits of Officers Byrd and Lewis, who both stated that they acted only in their official capacity as police officers for the City of Gosnell and never as individuals on their own behalf. Officer Lewis stated that, after the arrest warrant was issued and appellant was arrested, appellant appeared before the district court judge, who set the bond and found probable cause to detain appellant. Lewis stated that the prosecuting attorney then reviewed the file and determined there was sufficient cause to proceed with prosecution of the case.

Finally, appellees attached the affidavit of the prosecutor of appellant's criminal case. He stated that, after reviewing the

information submitted to his office regarding the allegations against appellant (including the fact that the alleged victim was mentally deficient), he felt that probable cause existed and submitted the matter to the district court for an arrest warrant. He stated that the district court issued an arrest warrant. He said that the mother of the alleged victim initiated the matter and that the victim identified appellant as her assailant in a yearbook. He also stated that the victim identified appellant as the assailant at trial. He felt that the defendant's alibi witness for the time of the alleged incident largely led to appellant's acquittal. He also noted that the circuit judge denied appellant's motion for directed verdict and felt that there was sufficient evidence to submit the matter to the jury. Finally, he averred that at no time during the investigation or trial did he witness any officers from the City of Gosnell do anything intentionally or anything that might be considered improper in their investigation of the case.

In his response, appellant admitted that appellees were immune from the negligence claims and that Fred Roberts should be dismissed because he was not the chief of police at the time of the incident. He then argued that arresting a man without probable cause, holding him in jail for six months, holding him up to public ridicule for having allegedly raped a mentally deficient little girl and then putting him through the ordeal of a trial under the circumstances of this case "is just the kind of conduct by a police department which a civilized society should not tolerate, and in fact does not tolerate." He also stated that the jury found him not guilty. He attached to his response the depositions of Officers Byrd and Lewis.

### III.

With regard to the City of Gosnell and the Mayor, Dick Reams, the complaint does not allege, nor does appellant's response to the motion for summary judgment present any evidence to show, that these parties did anything intentionally to damage appellant. While appellant claimed in his response that Mayor Reams "intentionally" failed to require the City of Gosnell to adopt rules and regulations regarding proper police procedures, he failed to explain specifically what procedures he had a duty, and failed, to adopt. Moreover, he presented no evidence in response to appellees' affidavits to prove these allegations.

Therefore, what is left are the allegedly tortious and unconstitutional intentional acts of Officers Byrd and Lewis. Appellant's complaint alleges claims of arrest and seizure without probable cause, which violated his constitutional rights; malicious prosecution; and the tort of outrage. The circuit court and the parties concluded that these claims hinged on whether the officers had probable cause to arrest appellant. In the hearing on the motion for summary judgment, the circuit court opined: "If there was probable cause, everything else that happened is an extension of a legitimate arrest based on a legitimate charge." Absent proof that Officers Byrd and Lewis intentionally withheld or knowingly provided false information in obtaining the warrant, we agree with the circuit court that its review of the officers' conduct, and ours, ends at that point. Once the court issued the arrest warrant, the officers' responsibility for pursuing the case was complete. At that point, the strength and evaluation of the case against appellant lay in the hands of the prosecutor, the circuit court, and the jury.

We turn to the investigating officers' conduct. Officers Byrd and Lewis investigated this case after the victim's mother

called the Gosnell Police Department. They interviewed the victim's mother, Ms. Priddy, and the victim. Acting upon a description of the alleged perpetrator provided by the victim, Officer Byrd interviewed a resident of Knight's Trailer Park and was informed that appellant had visited the resident's daughter the afternoon of the incident wearing clothes similar to those worn by the alleged perpetrator. Officer Lewis interviewed B., who independently identified appellant as the perpetrator from an old yearbook. According to Ms. Priddy's affidavit, which appellant provided no evidence to refute, neither officer mentioned appellant's name to B. or suggested that he was a suspect.

On this evidence, the prosecuting attorney submitted an affidavit for an arrest warrant. The district court determined that the evidence was sufficient and issued a warrant. In an affidavit attached to appellees' motion for summary judgment, the prosecuting attorney stated that he "felt that probable cause existed." He acknowledged that he was aware of the alleged victim's mental deficiencies when he made the determination to request the warrant and prosecute the case. He also stated that B. identified appellant as the alleged perpetrator in open court. Finally, he said that, during his investigation and trial, he saw nothing to suggest that any officers from the City of Gosnell did anything "intentionally or did anything that might be considered improper in their investigation of this case." Appellant presented argument, but no evidence, to refute this. The circuit court denied motions for directed verdict at the close of the State's case and at the close of all of the evidence, demonstrating the court's belief that the evidence was sufficient to be submitted to a jury.

We cannot say that probable cause did not exist to support the arrest warrant.

And appellant failed to meet proof with proof to demonstrate the existence of a material issue of fact on his claims of malicious prosecution, the tort of outrage, or any other intentional act of the investigating officers. Therefore, we affirm the court's order dismissing his lawsuit.

### IV.

■ For appellant's second point on appeal, he contends that the court erred in denying his request for specific findings of fact and conclusions of law. After the court's letter opinion was issued indicating that it was granting appellees' motion for summary judgment, but before an order was entered, appellant filed a motion pursuant to Rule 52 of the Arkansas Rules of Civil Procedure requesting the court to make specific findings of fact and conclusions of law constituting the grounds of its decision. The court entered an order denying appellant's motion on the same day it entered the order granting summary judgment.

■ Rule 52 provides in pertinent part as follows:

(a) **Effect.** If requested by a party at any time prior to entry of judgment, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions, the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.... Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules.

Ark. R. Civ. P. 52(a) (2011). First, the court's ruling dismissing this case was made pursuant to Ark. R. Civ. P. 56 (2011). A court grants a motion for summary judgment when it determines that there

are no genuine issues of material fact to be litigated and, therefore, that the party is entitled to judgment as a matter of law. *Mitchell*, 366 Ark. at 596, 237 S.W.3d at 458. By definition, the action was never "tried upon the facts" to either a jury or the court. The object of a summary judgment proceeding is not to try the issues, but to determine if there are any issues to be tried. *Buie v. Certain Underwriters at Lloyds of London*, 79 Ark.App. 344, 348, 87 S.W.3d 832, 835 (2002). Thus, Rule 52 is inapplicable to a court's decision pursuant to Rule 56. Furthermore, Rule 52 specifically provides that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under these rules." Appellant argues that, notwithstanding this language, the better practice would be for the court to explain its decisions. Perhaps. But this court has no authority to rewrite Rule 52; accordingly, we affirm the court's denial of his motion.

Affirmed.

VAUGHT, C.J., and GLOVER, J., agree.