In re Excel BABER, Jr. and Jennifer L. Baber, Debtors.

No. 3:13–bk–16676.

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

Signed Dec. 29, 2014.

---

Sara Annell Rogers, Attorney at Law, West Memphis, AR, for Debtors.

## ORDER RE OBJECTION TO CLAIM

AUDREY R. EVANS, Bankruptcy Judge.

On October 2, 2014, the Court heard the *Objection to Proof of Claim## 15 Filed by America's Servicing Company* (Dkt. # 52) ("**Objection**") filed on behalf of the Debtors, Excel and Jennifer Baber, and the *Amended Response to Debtors' Objection to Proof of Claim # 15 Filed by America's Servicing Company* (Dkt. # 61) filed on behalf of Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Capital I Inc. Trust 2006–NC2, Mortgage Pass–Through Certificates, Series 2006–NC2; Servicer: America's Servicing Company ("**Deutsche/ASC**"). Sara Rogers appeared on behalf of Debtors, who were not present, and Aaron Caldwell appeared on behalf of Deutsche/ASC. After oral argument, testimony and presentation of evidence, the Court took the matter under advisement.

The Debtors' Objection challenges whether Deutsche/ASC is the real party-in-interest to collect the Debtors' mortgage debt. Specifically, Debtors assert that Deutsche/ASC has presented false and fraudulent documentation in support of its proof of claim and that it was impossible for the original mortgagee to assign the note to Deutsche/ASC for servicing.[1] The Debtors also object to the amount claimed by Deutsche/ASC, alleging that the claim includes charges and expenses that were incurred fraudulently. Deutsche/ASC responds that the Debtors lack standing to object to the assignment of the note at issue, that the note was properly assigned, and that because Deutsche/ASC has possession of the note at issue indorsed in blank, it is the proper party to enforce the note and file the claim at issue. As explained in this Order, the Debtors' Objection is overruled. The Court finds that the Debtors have not shown that Deutsche/ASC engaged in any

---

**1.** The Objection states that the Debtors listed their mortgage debt as disputed on Schedule D of their bankruptcy petition. At trial, Debtors' counsel acknowledged that although she had intended to file an amended Schedule D listing the debt as disputed after Deutsche/ASC's claim was filed, she had not done so. The Court's docket reflects that an amended Schedule D has still not been filed.

fraud in presenting the indorsed note; that the Debtors lack standing to object to the assignment of the note; and that the Debtors have not shown that the fees or expenses claimed by Deutsche/ASC on its proof of claim were fraudulently incurred or unreasonable. In fact, Debtors do not allege that they have been harmed by their mortgage servicer in any way; instead, Debtors attempt to show that the transactions resulting in Deutsche/ASC servicing their mortgage are questionable. None of those transactions are alleged to be a source of Debtors' financial troubles leading them to file bankruptcy. For instance, Debtors do not allege that their loan payments were not applied, that loan payments were applied incorrectly, that the amount owing on their mortgage has been miscalculated, or that another creditor asserts an interest in their home. In sum, Debtors seek to disallow their mortgage debt based solely on their belief that although Deutsche/ASC holds the note and mortgage on their home, the transactions leading to its possession of the note and mortgage are questionable. This belief is insufficient to rebut the prima facie validity of Deutsche/ASC's proof of claim.

## FACTS

The claim filed by Deutsche/ASC identifies Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Capital I, Inc. Trust 2006–NC2 ("**Deutsche**") as the owner of the debt and ASC as the party to contact for notice purposes as the servicer of the debt. Deutsche/ASC attached to its claim a copy of the adjustable rate note entered into between the Debtors and New Century Mortgage Corporation ("**New Century**") on November 7, 2005 (the "**Note**"). The Note included a blank undated indorsement executed by the Vice–President of Records Management for New Century. New Century filed a Chapter 11 Petition for bankruptcy relief in 2007. On June 17, 2008, New Century granted Wells Fargo Bank, N.A. ("**Wells Fargo**")[2] a limited power of attorney to service certain loans originated by New Century and to execute certain documents in connection with those loans, including the assignment of mortgages or deeds of trusts and other recorded instruments. At trial, Deutsche/ASC produced the Limited Power of Attorney which references certain agreements attached to it as Schedule A that identify those loans originated by New Century and serviced by Wells Fargo. Schedule A to the Limited Power of Attorney was not introduced into evidence, but an assignment of the deed of trust on Debtors' home to Deutsche executed by Andrew Forsburg of Wells Fargo by virtue of his power of attorney dated November 23, 2011, was produced.

In an earlier foreclosure proceeding (CV 2012–15) filed in the Circuit Court of Crittenden County, Arkansas, Deutsche/ASC attached a copy of the Note without the indorsement. In 2012, the Debtors filed bankruptcy (case no. 3:12–bk–10705). The attachments to Deutsche's proof of claim filed in that case include the Note with the blank indorsement. In 2013, the Debtors filed this bankruptcy case, and again, the attachments to Deutsche's proof of claim filed in that case include the Note with the blank indorsement.

Deutsche/ASC's proof of claim also lists a number of prepetition fees, expenses, and charges. At trial, Deutsche/ASC submitted a loan history which listed the dates these expenses were incurred.

**2.** According to the testimony of Tonya Johnson, a loan verification analyst for Wells Fargo, Wells Fargo does business in the name of America's Servicing Company, and America's Servicing Company is the servicer for Deutshe Bank pursuant to a pooling and servicing agreement.

## LEGAL STANDARD

A filed proof of claim is prima facie evidence of its validity and amount if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr.P. 3001(f). Rule 3001(a)-(c) provides that a proof of claim must be in writing, be executed by the creditor or its authorized agent, and, when based on a writing, be filed with the original or a duplicate of that writing. Fed. R. Bankr.P. 3001(a)-(c). Rule 3001(d) requires that, if the creditor claims a security interest in the debtor's property, "the proof of claim shall be accompanied by evidence that the security interest has been perfected." Pursuant to 11 U.S.C. § 502(a), a claim "is deemed allowed, unless a party in interest ... objects."

■■■■ " 'Claim objectors carry the initial burden to produce some evidence to overcome the rebuttable presumption of validity.' " *In re Koontz,* 2010 WL 5625883, 7–8 (Bankr.N.D.Ind.2010) (quoting *In re Vanhook,* 426 B.R. 296, 298–99 (Bankr.N.D.Ill.2010) (citations omitted)). *See also In re Consumers Realty & Development Co., Inc.,* 238 B.R. 418, 422–423 (8th Cir. BAP 1999) (citing *Gran v. Internal Revenue Serv. (In re Gran),* 964 F.2d 822, 827 (8th Cir.1992)). "Once the objecting party produces evidence rebutting the claim, the burden of proof shifts to the claimant to produce evidence establishing the validity of the claim." *In re Consumers Realty & Development Co., Inc.,* 238 B.R. at 423 (citing *In re Gran; In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3rd Cir.1992); *In re Harrison,* 987 F.2d 677, 680 (10th Cir.1993)).

## ANALYSIS

### A. Alleged Fraud in Presentation of Note with Indorsement

Deutsche/ASC's possession of the original Note indorsed in blank would normally end any inquiry as to its standing to file a proof of claim based on the note. However, the Debtors allege that the indorsement in blank by New Century was fraudulently placed on the Note based on the prior presentation of an unindorsed note in the Crittenden County foreclosure proceeding. ASC maintains that a copy of the Note without the indorsement must have been filed by error.

■■■■ A negotiable instrument indorsed in blank makes that instrument "bearer paper." Ark.Code Ann. § 4–3–109 ("A promise or order is payable to bearer if it ... does not state a payee."). The right to enforce bearer paper is transferrable through possession of the negotiable instrument. Ark.Code Ann. § 4–3–205 ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."). The right to enforce a note carries with it the right to enforce the mortgage. *Bryan v. Easton Tire Co.,* 262 Ark. 731, 732, 561 S.W.2d 79, 79 (Ark.1978) ("The note and the mortgage are inseparable."). *See also* 55 Am.Jur. Mortgages § 927 ("The mortgage follows the debt, in the sense that the assignment of the note evidencing the debt automatically carries with it the assignment of the mortgage.").

■■■■ At trial, ASC presented the original Note with wet signatures and the indorsement in blank. ASC's witness testified the Note was obtained from a vault maintained by ASC in Minnesota. Additionally, the Debtors listed ASC as their mortgage servicer in both their current bankruptcy and a prior bankruptcy, and the loan history submitted into evidence shows that ASC has in fact been servicing the Debtors' mortgage debt. In a case

where similar allegations were made, this Court stated:

> The sudden appearance of an indorsement to PHH might be suspicious if it were not for the fact that other evidence in the record shows that the mortgage had already been assigned to PHH prior to the Debtor's bankruptcy petition. Specifically, the assignment executed on May 19, 2009, and recorded on June 11, 2009, states that GE Money Bank assigned the mortgage on the Debtors' home to PHH. The Note indorsed to PHH along with the assigned mortgage, and the fact that the Debtors listed PHH as their mortgage creditor on their schedules, is enough to establish that PHH had standing on the day of filing. In sum, although PHH offered no evidence to prove its chain of title other than attaching the indorsed Note to its Second Amended Proof of Claim the day before trial, the Debtors' suspicions regarding when these indorsements to the Note were executed are not sufficient to rebut the prima facie validity afforded PHH's Second Amended Proof of Claim.

*In re Burrow,* No. 3:09–BK–18876, 2011 WL 1103354, at *5 (Bankr.E.D.Ark. Mar. 22, 2011). Just as in *Burrow,* the sudden appearance of an indorsed note is suspicious but insufficient to rebut the prima facie validity afforded ASC's proof of claim. Furthermore, as explained below, Debtors do not have standing to invalidate the Note and mortgage based on alleged inadequacies in its assignment.

**B.   Debtors' Standing to Object to Assignment of the Note and Mortgage**

▇  Debtors' objection to Deutsche/ASC's claim also alleges that the Note was not properly transferred to Deutsche/ASC. ASC presented proof of the transfers and assignments in question, including: (1) the limited power of attorney from New Century to Wells Fargo which authorized the assignment of loans originated by New Century, and (2) a copy of the assignment from Wells Fargo, as power of attorney for New Century, to Deutsche. Despite this evidence of its chain of title, Deutsche/ASC argued that the Debtors—as third parties to these transfers—lacked standing to question these transfers. This Court has previously examined whether a debtor as a third party to the transfer and assignment of a note and mortgage on her home had standing to bring claims based on the invalidity of those transfers and assignments. The Court stated:

> . . . the Defendants are correct in that the Plaintiff, a third party, generally lacks standing to challenge assignments of her Note and Mortgage. *See, e.g., In re Walker,* 466 B.R. 271, 285 (Bankr. E.D.Pa.2012) ("[I]f a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue."); *see also Blackford v. Westchester Fire Ins. Co.,* 101 F. 90, 91 (8th Cir.1900) ("As long as no creditor of the assignor questions the validity of the assignment, a debtor of the assignor cannot do so.").

*In re Speed,* No. 3:09–BK–17860, 2013 WL 7710285, at *5 (Bankr.E.D.Ark. Dec. 7, 2013). In *Speed,* the Court also distinguished two cases cited by the debtor/plaintiff: *Wells Fargo Bank, N.A. v. Erobobo,* 39 Misc.3d 1220(A); 972 N.Y.S.2d 147 (N.Y.Sup.Ct.2013) and *Saldivar v. JPMorgan Chase Bank, N.A. (In re Saldivar),* No. 11–10689, 2013 WL 2452699 (Bankr.S.D.Tex. June 5, 2013), stating:

> Ultimately, save the two cases identified by the Plaintiff, the great weight of authority holds that borrowers do not have standing to challenge [pooling and servicing agreements]. In *Walker,* the

Court scoured the case law on this issue and concluded:

> it appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement, *i.e.*, the PSA.

466 B.R. at 285 & nn. 28–29 (collecting cases); *see also Reinagel v. Deutsche Bank Nat. Trust Co.*, 722 F.3d 700, 708 n. 29 (5th Cir.2013) ("... [C]ourts invariably deny mortgagors third-party status to enforce PSAs.") (collecting cases). *Id.* at n. 4. In Speed, this Court also rejected the debtor/plaintiff's claims that assignments of her note and mortgage were fraudulent because MERS, the purported assignee, allegedly lacked the authority to make the transfers, holding that because the debtor/plaintiff had made no allegations of a cognizable injury based on the transfers, her claims will fail as a matter of law. *Id.* at n. 5. Likewise, the Eighth Circuit Court of Appeals has held that uninjured borrowers lack standing to challenge the transfer and/or assignment of their mortgage loans. *Quale v. Aurora Loan Servs., LLC*, 561 Fed.Appx. 582, 583 (8th Cir.2014) ("Quite simply, the Quales were not injured by the assignment. The party injured by an improper or fraudulent assignment is the mortgagee-assignor (mortgage holder), not the mortgagor (homeowner). '[A]ny dispute would be between the assignor and assignee.' ") (quoting *Novak v. JP Morgan Chase Bank, N.A.*, No. 12–00589, 2012 WL 3638513, at *6 (D.Minn. Aug. 23, 2012)); *see also Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir.2013).

The Debtors do not have standing to challenge the assignment of the Note and corresponding mortgage; they are not a party to the assignment and do not allege an injury resulting from the assignment. The Debtors simply claim the assignment is not effective—in part, based on language transferring a deed of trust rather than a mortgage—and in part, on the alleged impossibility that New Century could transfer the Note and mortgage based on its 2007 bankruptcy.[3] The Debtors have not claimed that they did not take out this debt or that there is not a mortgage on their home or that they have suffered any injury based on the allegedly defective assignment (such as collection efforts by two separate creditors on the same debt). *See e.g., In re Hill*, No. 13–50707, 2014 WL 801517, at *6 (Bankr. E.D.Ky. Feb. 28, 2014) ("The Debtor has made no allegation that the debts are owed to someone else, or that the debts are not owed at all. In short, the claimants' docu-

---

**3.** The Debtors' allegations regarding New Century's transfer of assets in its bankruptcy case were not substantiated by the documents introduced into evidence. Specifically, paragraph 22 of the *Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008* entered in New Century's bankruptcy case on July 15, 2008 provides for the transfer of the "liquidating trust assets" as described in Article 8.E.1 of the Plan to be conveyed to a liquidating trust. Debtors maintain that all of New Century's assets were transferred to the liquidating trust at that time, but did not submit a copy of the plan with a list of those assets transferred to the liquidating trust. Further, the order confirming the plan was entered after the date New Century executed the assignment to Wells Fargo (on June 17, 2008), and Paragraph 72 of the order allows for the execution of such assignments by the New Century debtors prior to the effective date which is defined by the plan; again, the plan was not submitted into evidence.

mentation is sufficient and the Debtor's standing arguments are without merit."); *see also In re Washington,* 468 B.R. 846, 853 (Bankr.W.D.Mo.2011) aff'd sub nom. *Washington v. Deutsche Bank Nat. Trust Co.,* No. 11–01278–CV–FJG, 2012 WL 4483798 (W.D.Mo. Sept. 28, 2012) ("Possession of the note insures that this creditor, and not an unknown one, is the one entitled to exercise rights under the deed of trust, and that the debtor will not be obligated to pay twice.").

Based on controlling Eighth Circuit precedent, the Court's decision in *Speed,* and the Court's review of caselaw cited in *Speed,* the Court finds that Debtors lack standing to attack the power of attorney and assignment that led to ASC servicing their mortgage debt where Debtors allege no cognizable injury. The Court does not hold that Debtors lack standing to object to a claim based on an allegation that they do not in fact owe that particular claimant or that the claimant has not provided proper documentation to show that it is the proper claimant. The Debtors certainly have standing to object to claims under 11 U.S.C. § 502 and Rule 3001. However, in this case, Deutsche/ASC has attached a note indorsed in blank to its claim and has produced the original note; the Debtors do not have standing to object to Deutsche/ASC's claim based on questions about how Deutsche/ASC came to hold the claim (*i.e.,* service their mortgage debt), particularly where they claim no injury such as collection efforts by two separate creditors claiming to hold the rights to their mortgage payments.

## C. Fees

The Debtors allege that all fees charged by Deutsche/ASC are fraudulent because the assignment of the Note was fraudulent. Having found that the Debtors lack standing to challenge the assignment of the Note, and that the Debtors have not established that the Note was fraudulently indorsed, there appears to be no basis on which the Court could find the fees were fraudulently incurred. The fees asserted by Deutsche/ASC on its proof of claim were testified to by its witness who identified those charges on the payment log maintained by ASC. Debtors did not question the reasonableness of any of these fees. For instance, the Debtors do not allege that ASC charged an unreasonable amount for attorneys' fees, property inspection fees, filing fees and court costs, late fees, or appraisal fees. The Debtors did question whether the Note and mortgage authorized the fees claimed. The Court has reviewed the Note and mortgage and finds that the Note provides for late charges in Paragraph 7(A) and other expenses associated with the protection of the Note holder's interests in Paragraph 7(E). The mortgage also provides for all the fees charged in Paragraphs 1, 9, and 14. Accordingly, the Debtors' objection to Deutsche/ASC's claim for fees is overruled.

## CONCLUSION

The Court finds that the Debtors have not shown that Deutsche/ASC engaged in any fraud in presenting the indorsed note; that the Debtors lack standing to object to the assignment of the Note; and that the Debtors have not shown that the fees and expenses claimed by Deutsche/ASC on its *proof of claim were fraudulently incurred* or unreasonable. It is hereby

**ORDERED** the *Objection to Proof of Claim # 15 Filed by America's Servicing Company* (Dkt. # 52) is **OVERRULED.**

**IT IS SO ORDERED.**